IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

KRISTI L. SHELTON,                    )
                                      )
                Plaintiff,            )
                                      )
                                      )
v.                                    )        No. 2:10-CV-89
                                      )
TECHPACK AMERICA INC. and             )
TINA HODGES, individually,            )
                                      )
                Defendants.           )

## MEMORANDUM OPINION

This civil action is before the court for consideration of the "Motion for
Summary Judgment" filed by defendants [doc. 16]. Plaintiff, Kristi Shelton, has filed a
response [doc. 21] that addresses defendant Techpack America Inc.'s ("Techpack") motion
only. In a footnote, Shelton indicates that a notice of dismissal with prejudice will be
submitted regarding the claims asserted against defendant Tina Hodges individually, and in
fact a stipulation of dismissal was entered April 4, 2011 [doc. 26]. Therefore, this opinion
only addresses Techpack's motion. Techpack has also submitted a reply brief [doc. 27].
Oral argument is unnecessary, and the motion is ripe for the court's determination.

Shelton has brought suit under the Fair Labor Standards Act ("FLSA"), 29
U.S.C. § 201 et seq., for unpaid overtime and for retaliation under the FLSA. She has also
asserted a claim for a hostile work environment under the Tennessee Human Rights Act
("THRA"), Tenn. Code Ann. § 4-21-101 et seq., and for retaliation for bringing that claim.
Shelton additionally has asserted a common law retaliatory discharge claim and a retaliation

claim under the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304. For the reasons that follow, the motion will be granted in part and denied in part.

## I.

### *Background*

Techpack manufactures packaging and supplies for products, including cosmetics. At one time, Techpack employed between two and six customer service representatives ("CSRs"). These employees were responsible for dealing with customers, placing orders, and doing follow through in the manufacturing process, including delivery and payment. In December 2009, the CSR department was eliminated from the Morristown facility.

Shelton began working at Techpack's Morristown, Tennessee facility in July 2002 as a part-time employee. In February 2003, Shelton was employed full time as a CSR. The change of status form under remarks states, "Change from P.T. Status to full time change from non-exempt to Exempt Status." In August 2003, she was given a raise, and the change of status form reflects that she was a salaried and exempt employee. Shelton's position in this case is that in a meeting in 2007 the CSRs were informed that they were from that time forward to be salaried, non-exempt employees. Techpack's position is that Shelton was always treated as a non-exempt employee and cites to an incident in June 2004 when Shelton was informed she could not work extra hours to make up for a sick day. Shelton was informed that if she missed a partial day for a doctor's appointment she could make the time

up.  Techpack contends that if Shelton had been exempt at that time, 2004, she would not have needed to make up missed time for a doctor's appointment.

Shelton seeks unpaid overtime for 2007 through 2009.  Although she was paid overtime during these periods, she says her supervisor, Tammy Casteel, at times did not or refused to turn in the overtime.  Casteel was responsible for turning in the overtime hours so the CSRs would be paid.  Shelton testified that after the meeting in 2007 when she says the CSRs were informed they were no longer exempt, Casteel told her that overtime had to be pre-approved.  Shelton further testified that the nature of the CSR job was such that a CSR would not know in advance when overtime would be required.

The record reflects that tardiness was a regularly occurring issue with the CSRs.  At some point the CSRs were required to use a key fob which was scanned to enter the building.  Tina Hodges is the Human Resource and  Environmental Safety and Health Manager ("HR Manager") at Techpack's Morristown, Tennessee facility.  She would obtain copies of the dates and time when the CSRs entered the building.  If a CSR scanned in late, she could check with the CSR supervisor Casteel to ascertain whether the tardy entry was excused.  Eventually, mid 2009 according to Shelton,  a time clock was installed, and the CSRs were required to clock in and out.  Hodges represents that the time clock was used not just to see if the CSRs were tardy but also for compensation purposes.  The record also reflects that Shelton was individually counseled regarding her multiple instances of tardiness.

In early September 2009, events concerning instant messages between Casteel

3

and a male engineer in the company began to unfold that ultimately led to Shelton's termination. Casteel and the manager had been having an affair and communicated sexually explicit messages to each other using the instant message system on Techpack's computer system. When a CSR brought copies of the messages to the attention of Hodges and Blanca Marquez, Casteel's supervisor who was located at Techpack's facilities in Mexico, an investigation was initiated.

Casteel and the engineer were interviewed, both admitting that the instant messages were between them. They were informed that their were employment would be terminated, and both accepted offers to resign in lieu of termination. Hodges and Marquez then interviewed the CSRs on September 17, 2009.

Based on Hodges's notes from the interviews, Shelton told them that she found the instant messages on the common drive of the computer system. She said she printed them from her computer each day and then deleted them. Marquez told Shelton in the interview that they had learned from Information Technology that the instant messages were not "found" but that the activity was planned and deliberate. The instant message information was configured to be saved on the common drive, and it had also been determined that all of the activity took place on Shelton's desktop computer. When asked if she had TC [Casteel's] passwords and user Id and permission to use them, she responded, "No. I should not be penalized." Marquez made clear at that point that the investigation was not complete so punishment was not in order at that time. However, she also made it clear that they saw the situation as a breach of security and she would address those who

were responsible for accessing a manager's computer.

The notes from the interviews with the other CSRs indicate that the source of the information for the instant messages was Shelton's computer. One CSR reported that Shelton "checked the file every day and printed them. Then she deleted them. It was on the common drive." The same CSR stated in the interview that she was first notified when Shelton called her over to her desk to look at the information.

After completing the investigation, Marquez and Hodges concluded that there was circumstantial evidence pointing to Shelton as the person who configured Casteel's instant message account to be accessible on the common drive, which allowed Casteel's instant messages to be viewed, printed, and deleted on Shelton's computer. On October 13, 2009, Techpack terminated Shelton's employment. At the exit interview, Shelton denied her statements in the investigative interview regarding reviewing, printing and deleting the instant messages. However, in her deposition she readily admitted that she configured Casteel's instant messages so they would appear on the common drive. She also admitted that she would print copies and then delete them, and that she did this for multiple days.

II.

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment.[1]  Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried  its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of

---

[1] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010.  The Advisory Committee Notes to the 2010 amendments reflect that the standard for granting summary judgment "remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]." Fed. R. Civ. P. 56 advisory committee's note.  The summary judgment motion in this case was filed after the revised version became effective and therefore is governed by that version.  *Cf. Wheeler v. Newell*, No. 09-4549, 2011 WL 204457, at *3 n.3 (6th Cir. Jan. 24, 2011) ("The motion for summary judgment in this case was filed prior to December 1, 2010, and is governed by the version of Rule 56 that was in effect at the time the motion was filed.").  The parties herein have not cited to the revised rule.

a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992)

(citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

III.

*Analysis*

Shelton's Motion to Strike

Before addressing the merits of Shelton's claims, the court must first consider her motion to strike [doc. 22]. Shelton has moved to strike the affidavit of the HR Manager Hodges and the exhibits with the affidavit that Shelton contends are inadmissible.

In response to the motion, Techpack argues that a motion to strike is not the correct procedure for challenging an affidavit and exhibits submitted in support of a motion for summary judgment.[2] Techpack also defends the affidavit as being based on Hodges's

---

[2] The response was filed by both Techpack and Hodges. However, as noted above, Hodges has already been dismissed from this case, and the court's opinion addresses only Techpack's motion.

personal knowledge and the exhibits as being admissible as business records.

Shelton does not identify the specific rule under which she has brought her motion; nevertheless, motions to strike are governed by Federal Rule of Civil Procedure 12(f). *See Lombard v. MCI Telecomms. Corp.*, 13 F. Supp. 2d 621, 625 (N.D. Ohio 1998). Rule 12(f) provides that a court "may strike from *a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Rule 7(a) defines a "pleading" as:

> (1) a complaint;
> (2) an answer to a complaint;
> (3) an answer to a counterclaim designated as a counterclaim;
> (4) an answer to a crossclaim;
> (5) a third-party complaint;
> (6) an answer to a third-party complaint; and
> (7) if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7(a).

"An affidavit is not a pleading that is subject to a motion to strike under Rule 12(f)." *Scott v. The Dress Barn, Inc.*, No. 04-1298-T/AN, 2006 WL 870684, at *1 (W.D. Tenn. Mar. 31, 2006) (citations omitted). "Exhibits attached to dispositive motions are not 'pleadings' within the meaning of Fed. R. Civ. P. 7(a) and are therefore not subject to a motion to strike under Rule 12(f)." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006); *see also Rouse v. Caruso*, No. 06-CV-10961-DT, 2007 WL 209920, at *2 (E.D. Mich. Jan. 24, 2007) ("neither . . . motions nor responses to motions constitute 'pleadings' subject to Rule 12(f)") (citations omitted). "While some courts have utilized rule

12(f) to strike affidavits offered in support of summary judgment, there is no basis in the Federal Rules of Civil Procedure for doing so. Rule 12(f) is limited to pleadings and is inapplicable to other filings." *Turner v. City of Akron*, No. 5:06CV3023, 2008 WL 45376, at *4 (N.D. Ohio Jan. 2, 2008) (internal quotation marks and citations omitted). The court will not strike the affidavit or any of its attached exhibits.

The newly amended version of Fed. R. Civ. 56(c)(2) states: "*Objection That a Fact Is Not Supported By Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." In addition, Rule 56(c)(4) states: "*Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The advisory committee notes to subdivision (c)(4) state in part, "The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record." Fed. R. Civ. P. 56 advisory committee's note. Shelton's motion cites to former Rule 56(e) regarding affidavits and documents attached to them.

The court will not strike the affidavit or exhibits and therefore will deny the motion to strike. However, the court will determine whether portions of the affidavit or challenged exhibits should not be considered because they fail to meet appropriate standards.

Shelton alleges that paragraphs 4 through 12 of the affidavit should be excluded because they are not based on personal knowledge. The court has reviewed the paragraphs in question, and with the exception of paragraphs 5 and 9, they all refer to company documents that are part of the record. As the HR Manager, Hodges would have access to those documents, could review them, and describe their relevant content. However, the court will disregard any statements by Hodges that refer to events occurring prior to her employment and that are not based upon company documents. Such statements would not be based on Hodges's personal knowledge.

Additionally, Shelton argues that exhibits A through G to the affidavit should be excluded because they involve a time prior to Hodges's employment. However, as noted above, Hodges is the HR Manager and can verify company records and is competent to testify about matters contained in company records. In any event, the business records speak for themselves.

FLSA Claim for Overtime

Shelton has asserted a claim for unpaid overtime pursuant to the FLSA. Under the requirements of the FLSA, employers must "pay their employees time-and-a-half for work performed in excess of forty hours per week." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 764 (6th Cir. 2006). The employee has the burden of proving "by a preponderance of the evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting

10

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)).  If liability is established, the employee can prove damages "through discovery and analysis of the employer's code-mandated records*." Id.* (citing *Mt. Clemens Pottery*, 328 U.S. at 687).  "However, if the employer kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate." *Id*. (citing *Mt. Clemens Pottery* 328 U.S. at 687-88).  This lesser standard of proof applies only to establishing damages, not to proving a violation of the FLSA.  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602 (6th Cir. 2009) ("However, *Mt. Clemens Pottery* and its progeny do not lessen the standard of proof for showing that a FLSA violation occurred. Rather, *Mt. Clemens Pottery* gives a FLSA plaintiff an easier way to show what his or her damages are.").

Initially, the court will address the parties' arguments concerning Shelton's exempt or non-exempt status.  The FLSA exempts from its maximum hours requirement "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  The record reflects that there is an issue concerning whether and when Shelton was considered exempt.  However, the issue is not material nor relevant to the overtime being claimed.  Shelton is not seeking overtime for any period prior to 2007 , the period when she agrees she was treated as an exempt employee.  Thus, it does not matter whether she was exempt in 2004 as argued by Techpack.  The court will, therefore, look at the issue of Shelton's claim that she was not paid overtime during 2007 and after.

Shelton contends that she submitted overtime hours to Casteel who did not turn in the hours or refused to do so. Shelton points to the substantial increase in the payment of overtime hours after the time clock was installed compared to the period when overtime was submitted to Casteel for submission and payment. Part of Shelton's argument is that overtime had to be pre-approved by Casteel, and this was not practical for the CSR's type of work. However, there is nothing *per se* inappropriate about requiring pre-approval of overtime. *Cf. White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1100242 (W.D. Tenn. Mar. 23, 2011).

Nevertheless, there is a question of fact concerning whether Casteel refused or simply did not turn in overtime submitted by Shelton. The question is a close and narrow one, and Shelton is cautioned that she must demonstrate by a preponderance of the evidence that she performed work for which she was not compensated. *Myers*, 192 F.3d at 551. The relaxed standard of proof articulated in *Mt. Clemens Pottery* applies only to showing damages, not to establishing liability. *O'Brien*, 575 F.3d at 602. Therefore, on the narrow question of whether Shelton worked overtime which Casteel did not submit or refused to submit for payment, Techpack's motion for summary judgment will be denied.

FLSA Retaliation Claim

Shelton also alleges that she was retaliated against when she asserted her rights under the FLSA. The Act does contain an anti-retaliation provision that makes it unlawful "to discharge or in any other manner discriminate against any employee because such

employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]" 29 U.S.C. § 215(a)(3).  The *McDonnell Douglas* burden-shifting analysis applies to FLSA retaliation claims.  *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).  "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Id.*

If the plaintiff successfully makes this prima facie showing, a presumption is created that the employer unlawfully discriminated against the employee.  *Id.*  The burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the adverse employment action. *Id.*  If this burden is met, the plaintiff "must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons but merely a pretext for illegal discrimination."  *Id.*

For purposes of this motion, the court will assume that Shelton engaged in protected activity and it was known to Techpack.  An adverse employment action was of course taken when Shelton was terminated.  Shelton still must demonstrate a causal connection between the adverse employment action and the protected activity in order to establish her prima facie case.

"In order to demonstrate a causal connection, 'plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been

taken had the plaintiff not [engaged in the protected activity].'" *Id*. at 490 (quoting *Allen v. Mich. Dep't of Corr*., 165 F.3d 405, 413 (6th Cir. 1999)).  Shelton claims that two months prior to her dismissal she disputed the amount of overtime being paid to her and three months prior she complained about the time clock being installed.  "However, that the actions complained of followed the protected activity closely in time, standing alone, is insufficient to establish the causation element of a retaliation claim."  *Id*. (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)).

Shelton also argues that an instant message exchange between Casteel and an unidentified person shows a causal connection.  The context of the messages is a discussion of the CSRs, and the relevant portions are as follows:

| Casteel: | They had to start clocking in |
|----------|-------------------------------|
| Unknown: | Oh I know . . . But still couldn't you make their life hell |
| Casteel: | Trust me when I tell you their time will come. |
| Unknown: | Oh I'm sure . . . |

. . .

| Unknown: | . . . should consider themself (sic) lucky since they could loose (sic) their job if not careful |
|----------|----------------------------------------------------------------------------------------------------|
| Casteel: | Would only serve them right. |

This exchange does not support a causal connection between Shelton's protected activity and termination.  Casteel was not a decision maker regarding Shelton's dismissal.  Casteel herself had already been terminated by the time management met with Shelton to terminate her.  In fact, Casteel had been fired before the investigative interviews with the CSRs were conducted to determine how the instant messages had been obtained.  There is no proof that

Casteel's opinions about the plaintiff and the other CSRs had any effect on her termination. The person with whom Casteel was communicating remains unknown, further indication why no connection can be made between this exchange and Shelton's termination. Shelton is left with just the fact that she made some complaints several months before her termination. These do not raise an inference that she would not have been dismissed had she not made the complaints. Thus, Shelton has not presented evidence to demonstrate that she would not have been terminated had she not complained about her overtime or use of the time clock. She therefore has not stated a prima facie case.

Nevertheless, even if it is assumed for the purposes of argument that Shelton has stated a prima facie case of retaliation under the FLSA, Techpack has articulated a legitimate non-discriminatory reason for her termination. After investigation into how the instant messages were obtained, Techpack dismissed Shelton for violation of the company's computer access and use policies and code of conduct. Shelton must demonstrate then by a preponderance of evidence that the reason was a pretext for discrimination.

To raise a genuine dispute of material fact as to pretext and defeat summary judgment, Shelton must show that "(1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate [Techpack's] action, or (3) the proffered reason was insufficient to motivate the action." *Id*. at 491 (Citing *Cicero v. Borg-Warner Auto., Inc*., 280 F.3d 579, 589 (6th Cir. 2002)).

There is certainly a factual basis for the action taken by Techpack. Management representatives interviewed Shelton and the other CSRs. The CSRs implicated

Shelton as the source of the instant messages, and Shelton admitted to participating in printing and deleting the instant messages from her computer. Although Shelton back tracked in her termination interview about her earlier interview statements, in her deposition she admitted to configuring the instant messages on Casteel's computer so they would be on the common drive. She also admitted to printing them and then deleting them over a period of multiple days. Thus, there is no doubt that the proffered reason for her termination has a basis in fact.

Shelton has not shown that the proffered reason was insufficient to motivate dismissal. Management's investigation revealed solid circumstantial evidence that Shelton had accessed Casteel's computer and changed the configuration of Casteel's instant message account so she could monitor Casteel's instant messages on her own computer. This was done without Casteel's permission and was considered a breach of computer security. After reviewing the messages daily, Shelton deleted them so they would not be on the common drive. Techpack determined this was a violation of its computer use policies and code of conduct. Shelton has not shown how such conduct is insufficient to motivate termination based on company rules and policies.

Shelton is left with showing that the proffered reason did not actually motivate the dismissal in order to establish pretext. In an effort to show pretext, Shelton argues that she was the only person in customer service who was terminated although the other representatives also saw and discussed the instant messages. She also argues that at termination she was offered a severance package if she would sign a release. Shelton's

contention here is that if her "conduct was so egregious as the employer attempts to portray, why offer a severance package?"

These arguments do not raise a material issue of fact regarding Techpack's proffered reason for termination. Shelton may have been the only employee from customer service terminated as a result of the instant message episode, but her role in the matter was different than the other employees. She configured Casteel's computer so she could access the instant messages sent to Casteel's computer from her own computer on Techpack's common drive, thus initiating access to the information. Shelton monitored the messages, printed and then deleted them each day. The other customer service employees only knew about the instant messages and had access to them because of Shelton's actions.

Her conduct is certainly distinguishable from the other customer service employees who were not terminated. The investigative interviews revealed that the source of the instant messages was Shelton's computer and that the other employees viewed the messages on the common drive on her computer. After the investigation, the circumstantial evidence indicated that Shelton had to have been the person who accessed Casteel's computer and configured her instant message account so it would be accessible on the common drive. Techpack therefore terminated Shelton's employment on October 13, 2009. Although Shelton initially said she found them on the common drive, she later admitted in her deposition testimony that she did in fact configure Casteel's computer so that her instant messages went to the common drive, giving her access to monitor and print them. In addition, Shelton did not just access the messages one time and then take the information to

the appropriate management personnel. She checked and deleted them daily multiple times. None of the other customer service employees engaged in this conduct, and the differences explain why Shelton was terminated and the others were not.

The fact that Techpack offered Shelton a severance package is of no consequence. Companies often make a business decision to offer terminated employees severance and other benefits in exchange for a release. This in no way casts doubt on the validity of the reasons articulated for Shelton's termination.

Shelton has failed to demonstrate that Techpack's proffered reason for terminating her was a pretext for FLSA discrimination. Therefore, summary judgment on her FLSA retaliation claim is appropriate.


Hostile Work Environment Claim Under THRA

Shelton has alleged a hostile work environment claim based upon the actions of her supervisor, Casteel, in having an affair and engaging in conduct in furtherance of that affair in the customer service department. Shelton has brought her claim pursuant to the THRA. "The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Bailey v. USF Holland, Inc*., 526 F.3d 880, 885 n.1 (6th Cir. 2008) (citing *Campbell v. Fla. Steel Corp*., 919 S.W.2d 26, 31 (Tenn. 1996)); *see also Frye v. St. Thomas Health Servs*., 227 S.W.3d 595, 602 (Tenn. Ct. App. 2007) ("[O]ur analysis of Plaintiffs' hostile work environment claim is the same under both the THRA and Title VII of the Civil Rights Act.") (citing *Campbell*, 919 S.W.2d at 31).

18

To demonstrate a prima facie case of hostile work environment based on sexual harassment, plaintiff must establish by a preponderance of the evidence:

> (1) that she was a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and (5) that there is a basis for employer liability.

*Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (citing *Hafford v Seidner*, 183 F.3d 506, 512 (6th Cir 1999)). Techpack concedes that as a woman Shelton is a member of a protected class. Techpack, however, argues that Shelton's prima facie case fails because she cannot demonstrate that any claimed harassment was based on Shelton's sex and because even if she could show harassment it was not severe or pervasive enough as a matter of law to sustain a hostile work environment claim. The court agrees.

Shelton contends that Casteel and a male engineer in the company were having an affair and furthering their affair with conduct that created a hostile work environment in the customer service department. Shelton testified that the male engineer was in the customer service department on a daily basis and that he "would put his hands in his pockets and thrust his private parts towards [Casteel]. The male engineer was also frequently touching Casteel and making comments containing "sexual innuendo." This conduct made Shelton uncomfortable. According to the affidavit of Victoria Seals, who was also a CSR, the conduct between Casteel and the male engineer made it difficult for customer service employees to do their jobs. Shelton also points out that the instant messages between Casteel

and the engineer were sexually explicit.

With regard to whether the conduct at issue was based on Shelton's sex, the critical inquiry is "whether it was related to the plaintiff's gender," not whether it was related to "sex" or "sexually charged" in content. *Kinsey v. W.S. Badcock Corp.*, No. 1:07-cv-111, 2008 WL 2048207, at *5 (E.D. Tenn. May 12, 2008) (citing *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 520 (6th Cir. 2001) (Guy, J. concurring in part and dissenting in part) ("[I]f the environment is just sexually hostile without an element of gender discrimination, it is not actionable.")). Shelton must show that but for her gender she would not have been subject to the harassment. *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006) (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999)). "[I]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." *Id.* (quotation marks and citation omitted).

There is no proof that the conduct by Casteel and the male engineer was based upon Shelton's gender. Shelton has offered no evidence that her sex motivated Casteel's or the engineer's behavior. *Baugham*, 211 F. App'x at 439 (context of same sex harassment). None of the described conduct, including the sexually explicit conduct, was directed toward Shelton or the other CSRs. "Harassment does not arise . . . simply because the words used [or the gestures used] have sexual content or connotations." *Id.* (quotation marks and citation omitted). In addition, based on the alleged conduct and circumstances, there is no indication that Casteel and the male engineer would have acted differently had there been males

20

working in the customer service department. Their actions had nothing to do with Shelton's gender and everything to do with their own personal feelings and agenda. Accordingly, Shelton cannot show that the alleged harassment was based upon her gender, and on that basis her hostile work environment claim fails.

Nevertheless, even if Shelton could show that she suffered harassment based upon her gender, she still must demonstrate that the harassment was sufficiently severe and pervasive to alter her working conditions. Again the court agrees with Techpack that Shelton cannot meet this prong of her prima facie case.

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000) (quotation marks and citations omitted). "A hostile work environment exists when the work-place 'is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Conley v. City of Findlay*, 266 F. App'x 400, 408 (6th Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Baugham*, 211 F. App'x at 438 (citing *Harris*, 510 U.S. at 21). The harassing conduct must meet both an objective and a subjective test standard. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (citing *Harris*, 510 U.S. at 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's

purview")).

Courts must look at the totality of the circumstances when evaluating allegations of harassment in order to determine if they are sufficiently severe and pervasive to establish a hostile work environment. *Williams*, 187 F.3d at 562. "This totality -of-the circumstances examination should be viewed as the most basic tenet of the hostile-work-environment cause of action." *Id.* at 563. Factors the court must consider include: "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Harris*, 510 U.S. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* (internal quotation marks and citation omitted).

Shelton has failed to present evidence to show that her work environment was objectively offensive. She complains because the male engineer was constantly in the customer service department, but she admits that Casteel and the engineer worked on accounts together. The only specifics she offers regarding the conduct that created the hostile environment are, "[the male engineer] put his hands in his pocket and thrust his private parts toward [Casteel] a lot. Or, you know, always touching her or grabbing her or her him." Shelton has not offered any proof of how frequently this conduct occurred or over

what period of time. When asked about the length of time the conduct had gone on, she responded that it got worse in 2009.

There is no showing that the conduct between Casteel and the engineer was frequent or severe. None of the conduct was directed toward Shelton, so there is no showing that she was subjected to conduct that was physically threatening or humiliating. There is also no showing by Shelton that the conduct "unreasonably interfered" with her work performance. *Valentine-Johnson v. Roche*, 386 F.3d 800, 814 (6th Cir. 2004). Casteel's conduct with the male engineer was certainly inappropriate for the workplace, and the male engineer's sexual gestures toward Casteel were equally inappropriate. However, based upon the totality of the circumstances, Shelton has not demonstrated that "the workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of [her] employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 21 (1993) (internal quotation marks and citations omitted).

> [The Sixth Circuit] has rejected hostile work environment claims under circumstances that were far more sexually offensive. *See e.g., Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (holding that the employer's alleged request for sexual favors from the employee in exchange for a better evaluation, calling the employee "Hot Lips," making comments about the employee's state of dress, and telling dirty jokes in front of the employee did not create hostile working environment); *Burnett*, 203 F.3d at 985 (holding that the conduct of a supervisor who placed a pack of cigarettes under a female employee's bra strap, remarked that she had "lost her cherry," and said he was aroused by the phrase "dick the malls" was not sufficiently severe to create a hostile work environment); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997) (holding that a supervisor's teasing about the employee dancing

on tables at a local strip bar, joking about "Hooterville" or "Titsville," calling her a "broad," and making fun of her pronunciation of "bosom" did not create an objectively hostile environment).

*Roche*, 386 F.3d at 814. Based on this precedent and the minimal evidence presented by Shelton, there is no material issue of fact whether a reasonable person would find Shelton's work environment objectively hostile. Shelton has failed to show a hostile work environment, and on that basis her prima facie case also fails. Therefore, defendant's motion for summary judgment as to Shelton's hostile work environment claim will be granted.

<u>Retaliation - Hostile Work Environment</u>

Shelton alleges she was retaliated against for complaining about the inappropriate sexual relationship involving Casteel that she contends created a hostile work environment. "Retaliation claims under Title VII and the THRA are governed by the same standard." *Tolliver v. Children's Home-Chamblis Shelter*, No. 1:10-CV-77, 2011 WL 1159646, at *12 (E.D. Tenn. Mar. 28, 2011) (citing *Kessler v. Riccardi*, 363 F. App'x 350, 355 (6th Cir. 2010)); *see also Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). To establish a prima facie case, a plaintiff must show that: "1) she engaged in activity protected by statute; 2) her protected activity was known to the defendant; 3) the defendant thereafter took a materially adverse action against her; and 4) there was a causal connection between the protected activity and the materially adverse action." *Tolliver*, 2011 WL 1159646, at *12 (citing *Kessler*, 363 F. App'x at 355). If plaintiff makes this required

showing, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse action." *Kessler*, 363 F. App'x at 355 (quotation marks and citation omitted). If the defendant meets this burden, "the burden shifts back to the plaintiff, who must present evidence demonstrating that the articulated reason is pretextual and that the defendant's action was actually motivated by a desire to retaliate against the employee." *Id*. (quotation marks and citation omitted).

The court finds that Shelton has not made a prima facie showing for a retaliation claim because she cannot establish the first two factors. Shelton has presented no proof that she engaged in protected activity that was known to Techpack regarding an alleged hostile work environment. She took no action to report the information contained in the instant messages to management. She also did not complain about a hostile work environment when she was questioned concerning how the instant messages were obtained, or at any other time. The issue of a hostile work environment and its connection to the messages was not even mentioned by Shelton in her termination interview. If the purpose of obtaining and publishing the instant messages was to report the alleged hostile work environment, then certainly Shelton or one of the other CSRs would have mentioned the topic during the investigative interviews. When Shelton was being terminated, it is curious that she did not defend her actions as being in furtherance of ending a hostile work environment. Very simply, there is no proof that the Shelton was asserting rights under the THRA to complain about a hostile work environment nor is there proof that any such conduct was known to the defendant Techpack. Thus, Shelton cannot demonstrate a prima facie case

of retaliation under the THRA based upon her hostile work environment claim.

Nevertheless, even if for the purpose of argument it is assumed that Shelton has stated a prima facie case, Techpack has stated a legitimate, non-discriminatory reason for terminating her. Techpack has shown that Shelton was terminated for violating Techpack's computer use and access policies. At this point, to defeat summary judgment on this claim for retaliation, Shelton has to show a material issue of fact as to pretext. *See Martin v. Loomis Armored US, Inc*., No. 3:08-0418, 2009 WL 1956685, at *10 (M.D. Tenn. July 7, 2009). Shelton has the burden of demonstrating by admissible evidence that Techpack's proffered reason for her termination "either: (1) had no basis in fact, (2) did not actually motivate its action, or (3) was insufficient to motivate its action." *Corell v. CSX Transp., Inc*., 378 F. App'x 496, 503 (6th Cir. 2010) (citing *Hedrick v. W. Reserve Care Sys*. 355 F.3d 444, 460 (6th Cir. 2004)).

Under the circumstances of this case, Shelton cannot show pretext by claiming that there is no basis in fact for the termination since she admits engaging in the conduct that resulted in her being fired. As discussed under the FLSA retaliation claim, Shelton attempts to establish pretext by arguing that she was the only person in the customer service department who was terminated in connection with the instant message episode and that Techpack offered her a severance package in lieu of termination if she would sign a release. For the reasons already discussed, these arguments also fail in relation to the hostile work environment retaliation claim.

Accordingly, Shelton has failed to establish that Techpack's reasons for her termination were a pretext. Techpack is, therefore, entitled to summary judgment on the THRA retaliation claim.

## Shelton's State Law Retaliation Claims

### TPPA Claim

Shelton has also asserted claims under the TPPA and common law retaliatory discharge, again based on her alleged complaints about the failure to pay overtime and the hostile work environment.[3] In order to establish a prima facie case under the TPPA, a plaintiff must demonstrate four elements:

> (1) The plaintiff's status as an employee of the defendant;
> (2) The plaintiff's refusal to participate in, or to remain silent about, illegal activities;
> (3) The employer's discharge of the employee; and
> (4) An exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.

*Sacksv. Jones Printing Co., Inc.*, No. 1:05-CV-131, 2006 WL 686874, at *4 (citing *Hill v.*

---

[3] In *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777 (Tenn. 2010), the Tennessee Supreme Court called into question continued application of the *McDonnell Douglas* burden-shifting framework in state retaliation claims. However, in *Moling v. O'Reilly Auto., Inc.*, - - - F. Supp. 2d - - - - -, No. 09-1100, 2011 WL 112586 (W.D. Tenn. Jan. 13, 2011), the district court analyzed the relevant issues and concluded that the standard applied at the summary judgment stage is procedural rather than substantive. The district court therefore analyzed the plaintiff's state law retaliation claim using the *McDonnell Douglas* framework. This court will apply the same burden-shifting analysis.

*Perrigo of Tenn.*, No. M2000-02452-COA-R3-CV, 2001 WL 694479, at *3 (Tenn. Ct. App. June 21, 2001)). Under the TPPA, "the plaintiff must demonstrate an *exclusive causal relationship* between his whistleblowing activity and his subsequent discharge. That is, the plaintiff must show that he was terminated solely because of his whistleblowing activity." *Sacks*, 2006 WL 686874, at *3(citations omitted) (emphasis in original).

"Once a plaintiff has made out a prima facie case, the burden shifts to the employer to advance a non-discriminatory reason for the termination. The burden then shifts back to the plaintiff to show that his termination was solely for the reasons which he initially alleged." *Sacks*, 2006 WL 686874, at *4 (internal quotation marks and citations omitted). "Courts have recognized 'that the plaintiff has indeed a formidable burden in establishing elements number two and four of the cause of action.'" *Hill*, 2001 WL 694479, at *5 (and cases cited therein). The statute defines "illegal activities" as "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Wisdom v. Wellmont Health Sys.*, No. E2010-00716-COA-R9-CV, 2010 WL 5093867, at *3 (Tenn. Ct. App. Dec. 10, 2010); Tenn. Code Ann. § 50-1-304(a)(3).

Shelton's prima facie claim fails because she cannot show that she was terminated *solely* for any whistleblowing activity connected with the FLSA or THRA. The record is well documented demonstrating that Shelton was terminated for violation of company computer use and access policies. Based on this evidence, Shelton could not possibly show that she was terminated *solely* because of any whistleblowing activity, as

required by the statute. *Sacks*, 2006 WL 686874, at *4; *Hill*, 2001 WL 694479, at *3.

Summary judgment on the TPPA claim is appropriate.

## Common Law Claim

In order to establish a prima facie case of common law retaliatory discharge, a plaintiff must demonstrate:

> (1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or compliance with clear public policy.

*Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006)(citing *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002)); *see also McLeay v. Huddleston*, No. M2005-02118-COA-R3-CV, 2006 WL 2855164, at *6 (Tenn. Ct. App. Oct. 6, 2006). The essential difference between the statutory cause of action for retaliatory discharge and the common law cause of action is that with the common law cause of action a plaintiff need only show that his activity was a substantial factor in effectuating his discharge rather than showing it was the sole reason for his discharge. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002).

If the plaintiff makes the necessary prima facie showing, the burden shifts to the employer to articulate a legitimate, non-pretextual reason for the discharge. *Yates v. Hertz Corp.*, 285 F. Supp. 2d 1104, 1117 (M.D. Tenn. 2003) (citations omitted). If the employer offers a legitimate reason for terminating the plaintiff, the burden then shifts back to the plaintiff to show that the reason given is pretextual or not worthy of belief. *Id.* at 1118 (citations omitted). "Essentially, causation does not exist if the employer's stated basis for the discharge is valid and non-pretextual." *Id.* (citations omitted). In order to establish pretext, a plaintiff must demonstrate that (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate plaintiff's termination; or (3) the proffered reason was insufficient to motivate plaintiff's discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)).

Shelton alleges a common law retaliation claim regarding the FLSA and her hostile work environment claim under the THRA. The claim based on the THRA fails for some of the same reasons her retaliation claim under the THRA fails. As discussed above, Shelton has not shown that she attempted to exercise any statutory right concerning hostile work environment. Thus, she cannot meet the third and fourth prongs of the common law retaliation claim. Further, as discussed above in connection with Shelton's hostile work environment retaliation claim, she could not show that Techpack's legitimate reasons for terminating her were a pretext for discrimination. Therefore, even if Shelton could make out a prima facie case for common law retaliatory discharge based on her THRA claim, she could

not demonstrate pretext.

As to the common law claim based upon the FLSA, Shelton has not presented evidence showing that her complaints about her overtime and implementation of the time clock were a substantial factor in bringing about her termination. The fact that she made these complaints two or three months prior to her termination does not show that they had a substantial role in bringing about her dismissal. In any event, even if Shelton demonstrated a prima facie case of common law retaliation, she cannot establish pretext. As discussed above, Shelton has not presented evidence sufficient to demonstrate that Techpack's reason for her termination was a pretext for discrimination. Therefore, summary judgment on the common law retaliatory discharge claim is appropriate.


IV.

*Conclusion*

For reasons set forth above, Techpack's motion for summary judgment will be granted in part and denied in part. The motion will be denied as to whether Shelton was not paid for overtime submitted to Casteel who did not submit or refused to submit the request for payment. The motion will be granted in all other respects. Shelton's motion to strike will be denied. An order consistent with this opinion will be entered.

ENTER:

_____s/ Leon Jordan_____
United States District Judge